FURNAS COUNTY, APPELLANT, V. CHARLES M. EVANS ET AL., APPELLEES.

FILED OCTOBER 6, 1911. No. 16,544.

1. Counties and County Officers: COUNTY TREASURER: LIABILITY ON BOND. A county treasurer who receives money or anything of value in consideration for the use of the county funds is liable upon his bond for that profit.

2. ——: ——: ACTION ON BOND: PETITION: SUFFICIENCY. In an action upon a county treasurer's official bond, a petition states

facts sufficient to constitute a cause of action if the pleading, considered as a whole, in substance charges that subsequent to the enactment of chapter 50, laws 1891, the treasurer received interest upon county funds deposited by him in various banks, and did not account therefor.

APPEAL from the district court for Furnas county: ROBERT C. ORR, JUDGE. *Reversed.*

*R. J. Harper* and *Adams & Adams,* for appellant.

*Perry, Lambe & Butler, W. S. Morlan* and *J. F. Fults, contra.*

ROOT, J.

This is an action upon the official bond of a former treasurer of Furnas county. The defendants' general demurrer to the petition was sustained, and the plaintiff appeals.

The pleader alleged the plaintiff's corporate character; that the defendant Evans was elected as county treasurer for the years 1902 and 1903, and executed the bond in suit, which is conditioned as follows: "The condition of the above obligation is that, whereas the above bound C. M. Evans has been elected county treasurer in and for Furnas county, Nebraska: Now if said C. M. Evans shall render a true account of his office, and of the doings therein, to the proper authority, when required thereby or by law, and shall promptly pay over to the person or officers entitled thereto all moneys which may come into his hands by virtue of his said office, and shall faithfully account for all the balances of money remaining in his hands at the termination of his office, and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all moneys, books, papers and sureties or other property appertaining to his said office and deliver them to his successor, or to any person authorized to receive the same, and he shall faithfully and impartially without fear, favor, fraud or oppression, dis-

charge all other duties now or hereafter required of his office by law, then this bond to be void, otherwise in full force."

The plaintiff also alleged that the bond was accepted and approved and the treasurer inducted into office. The pleader also charges: "That during the term aforesaid for which the said defendant had been elected to said office, pursuant to the laws of the state of Nebraska, many banks in said county, among which were the Citizens State Bank, First State Bank, Wilsonville State Bank, applied to the county commissioners of the plaintiff county for the privilege of becoming depositories of the county's funds, and each and all of said banks entered into obligations which were approved by the county commissioners, the amounts of said obligations and dates of approval being as shown by exhibit A, hereto attached and made a part of this petition, whereby they became depositories of said county, the plaintiff herein, from the date of the approval of said bonds, and entitled to receive on deposit from the said county treasurer the surplus funds of the said county, thereby obligating themselves and agreeing to pay as interest for the privilege of keeping said moneys interest at a rate of not less than 3 per cent. per annum, to be computed on the average daily balances of such deposits, for each quarter of the year, and to be paid to said defendant Charles M. Evans, as county treasurer, and as agent of the plaintiff county, quarterly.

"The plaintiff further alleges and represents to the court: That, by virtue of the foregoing premises, the defendant Charles M. Evans, from the commencement of his said term of office and during the whole of said term, deposited large sums of the county's money in the above mentioned banks, and in other banks, the names of which and the amounts deposited therein being unknown to this plaintiff, and the plaintiff charges the fact to be that the average daily balances for the term so deposited by him in said depository banks and other banks were as follows:

For the first quarter of the year 1902, ending March 31, $30,831; for the second quarter of the year, ending June 30, $36,509; for the third quarter, ending September 30, $31,767; for the fourth quarter of said year, $26,066; for the first. quarter of the year 1903, $28,472; for the second quarter, $34,592; for the third quarter of the year 1903, $26,964; for the fourth and last quarter, $29,685; that the amount of interest so earned and the reasonable value thereof, by reason of said deposits in the various banks wherein it was kept during his said term of office, was the sum of $1,836.65. Of said interest so earned, the said defendant has accounted for and paid to the county, plaintiff herein, and received credit for, the sum of $540, and no more, thereby leaving a balance due plaintiff from said defendant in the sum of $1,296.65.

"The plaintiff alleges that the said defendant, Charles M. Evans, in violation of his oath of office, of his bond, and of the laws of the state of Nebraska, regulating the safe keeping, the depositing, the management and control of the county's funds, has carelessly, negligently and wil-fully failed and refused to account to this plaintiff for the amount so received and collected by him, and which he was in duty bound to collect, or he has collected the same and converted it to his own use, wrongfully and wilfully, to the plaintiff's damage in the amount above stated, and, although often requested, still refuses to pay the same to this plaintiff."

During the hearing on the demurrer, counsel for the plaintiff admitted in open court "that the defendant Charles M. Evans, as county treasurer, duly deposited and kept in the depositories mentioned in the plaintiff's petition the full amount as prescribed by law that he might deposit under the bonds set forth in said petition, and that on the deposits as made he collected and accounted for all interest earned on the amounts of money so deposited up to the amount prescribed by law that he ought to have deposited under the bonds as filed and approved by the county board." The transcript does not

contain a copy of the exhibits which are part of the petition, but the admissions in the defendants' briefs demonstrate that the penalty in all of the depository bonds aggregated but $20,000; $10,000, therefore, was the maximum amount that could lawfully have been deposited in those banks at any one time. It follows from a consideration of the petition that the treasurer's deposits at times were $26,500 in excess of the amount he could lawfully have deposited, unless he was within the exception noted in *Hamilton County v. Aurora Nat. Bank*, 88 Neb. 280. The treasurer accounted to the county for interest on not to exceed $10,000.

The allegations in the seventh paragraph of the petition that the treasurer "has carelessly, negligently and wilfully failed and refused to account to this plaintiff for the amount so received and collected by him, and which he was in duty bound to collect, or he has collected the same and converted it to his own use, wrongfully and wilfully, to the plaintiff's damage in the amount above stated," etc., are indefinite, but when taken in connection with the other parts of the petition, as against a general demurrer, should be construed at least to charge that the treasurer collected $1,296.65 as interest on these deposits, and did not account therefor, but converted it to his own use. Since the code does not permit a demurrer for uncertainty, a litigant's remedy for alternative or otherwise indefinite statements is by motion. The defendants elected to test the pleading by demurring thereto, and. having thereby admitted the verity of all of the allegations of fact well pleaded therein, must abide the legal consequences flowing therefrom.

During all of the time the treasurer held his office, section 21, art. III, ch. 18, Comp. St. 1901, was in force, and by its terms the treasurer and his bondsmen were held for any profit realized by him for the unlawful use of the county funds. Section 21, *supra*, in concise terms forbids the treasurer loaning, depositing or otherwise using or disposing of those funds, except by placing them

in a depository or by paying warrants lawfully drawn thereon. *Hamilton County v. Aurora Nat. Bank,* 88 Neb. 280, construes this section to contain an exception which permits the treasurer to lawfully deposit money in non-depository banks in case the maximum deposits have been made in the depositories, if the place provided by the county for safe keeping its funds is insecure, and the treasurer in good faith deposits the surplus funds without directly or indirectly receiving any profit therefrom. In this case the treasurer is not within the exception established by the *Hamilton County* case, *supra.*

It is argued that the statute does not hold the treasurer responsible for interest, but for profits realized for the use of the county funds; that "profit is the acquisition beyond expenditure, excess of value received for producing, keeping or selling over cost," and that the plaintiff does not allege that the treasurer profited by the transaction. In other words, that he may have been compelled to make good out of his private funds some of the principal of the deposits, and therefore it does not appear that he profited by the transaction pleaded. We do not think it necessary to consider abstract definitions of the word profit. The statute contains satisfactory internal evidence that the legislature intended the word to describe interest collected by the treasurer. "The making of profit, directly or indirectly, by the county treasurer out of any money in the county treasury belonging to the county, the custody of which the treasurer is charged with, by *loaning* or depositing or otherwise using or depositing the same in any manner, * * * except * * * shall be deemed guilty of felony, * * * and * * * shall also be liable under and upon his official bond for all profits realized from *such* unlawful using of such funds." Comp. St. 1901, ch. 18, art. III, sec. 21. Plainly the unlawful use may be accomplished by loaning the funds, depositing them, or by any use whereby, directly or indirectly, the treasurer profits by the transaction. If, as charged in the petition, the treas-

urer did collect and convert to his own use interest for the use of the plaintiff's funds, the defendants are liable to the plaintiff for that profit. The petition states a cause of action, and the district court erred in sustaining the demurrer.

The judgment of the district court therefore is reversed and the cause remanded for further proceedings.

REVERSED.